May it please the Court, the District Court's decision to impose sanctions on the lawyers in this case rested on a critical misunderstanding. The District Court seemingly believed that counsel could not object in good faith to Generations' failure to authenticate its version of Mr. Dillon's loan agreement without disclosing the version of that agreement in their possession. Let me ask, is it your view that failing to disclose that a copy of the loan agreement with the identical arbitration language which was faxed prior to the filing of the suit didn't multiply the proceedings or delay the resolution? Our view is that it did not, Judge Duncan. And how could that be given that we had an entire proceeding devoted to that? Sure. And this really goes to the critical distinction between an objection to authentication on the one hand and an objection to the underlying authenticity of the document on the other. Okay, but my question is really rather straightforward. And I recognize the distinction that you're drawing, and I'm trying to follow that. I'm trying to understand how that plays out. Sure. Because you can look at the timeline here, can you not, and think that had the fact of this agreement been disclosed, it would have obviated the need for an entire round of proceedings. I'm not sure that it would have, Judge Duncan. And that is because the objection that was being raised, and everyone really agreed both at the time and then in the subsequent appeal to the Fourth Circuit what the nature of that objection actually was. It was a burden-based objection. What counsel was doing on behalf of Mr. Dillon was putting Generations to its burden of proving under the words of Rule 901 that they had evidence sufficient to support a finding that the item is what the proponent claims that it is. Even though that same document would necessarily be disclosed during discovery? That is correct. Because first, of course, there was no obligation, affirmative obligation at the time to disclose. And second, because even if a party knows with absolute certainty that the document is authentic, there is actually nothing problematic about raising an authentication objection, about requiring a party to meet its evidentiary burden under Rule 901. Now, didn't the motion to dismiss hearing note, wasn't he referring to authenticity? I don't think so. And to be sure, there was some loose use of the term authenticity. But I think that both Mr. Six, my client, and the district court and defense counsel all understood that this was an authentication objection. Did the district court? Are you sure the district court understood it? Because the district court certainly felt that it had been misled. I think that the district court, Judge Duncan, in the sanctions order seemed to conflate the two notions. Well, I'm not sure. That's not quite my question. My question is, didn't the district court indicate that it felt that it had been misled during the earlier proceeding? Certainly. But I think that at the time of the earlier proceeding, if you take a look at page 206 and 207 of the joint appendix, the district court correctly characterized Mr. Dillon's objection as an authentication objection. And then Mr. Six was quite clear that it was defendant's burden. At page 221, he stated, quote, it is defendant's burden. And then again at page 227, he did not. I think we all get that point. But I think it's not the point. And I think it elides what the district court certainly felt was the point. And that goes to the point of delay. Because even if it's true that that was the nature of your objection, which the district court did not understand to be the case, the fact nevertheless remains that had it not felt that the attorneys were at best misleading on the point, it would have led to a swifter resolution. And I think, to be fair, Judge Duncan, even applying the clear error standard, I don't think that you can sustain any underlying finding that anything that Mr. Six said at the earlier hearing was misleading. And that's precisely because. Well, on page 549 of the record, the district court judge asked, is this the only one that you're making a challenge to the authenticity? I'm sorry. And the counsel didn't clear that up. Judge Thacker, I'm sorry. I thought page 549 was the argument. Oh, us. We asked. Right. Okay. Right. Judge Duncan asked. I distinctly remember asking. And I wanted to go through. I thought that was me. I'm sorry. Well, thank you for clearing up the mysteries. So maybe we should sanction counsel as well. So, Judge Thacker, I was actually going to go directly to that. I believe it's actually at page 548 where the judge, I assume, Judge Duncan asked. Into 549, yep. Yes. And Mr. Six said, yes, we're challenging that, i.e., the existence of the arbitration agreement. Under our system, when a piece of evidence is introduced, it's not incumbent on the other party to concede it. We can say we want to. Could we just slip right past the we're challenging the existence of? But I think if you read what he said in the remainder of the answer, it's quite clear that he was making an authentication objection. And then critically, Judge Duncan, if you go four pages further on to page 552, on rebuttal, Mr. Ramlett, on behalf of the defendants, said, and I think it's very important to focus on this, quote, now I believe that my colleague, Mr. Six, was asked if Mr. Dillon had ever disputed the authenticity, authenticity of the arbitration agreements. The answer is no. Never said once on the record. That's not my agreement. I didn't sign that. I don't know if that's my agreement. So I misunderstood when I said there was a confusion about the difference between the existence and the authenticity. But certainly my question suggested that I was interested in the existence. That was the word I used. And no attempt was made to clarify. Well, I think he was quite careful when he went on to say, and this is Mr. Six. Well, he was quite careful not to clarify. And that's sort of the point, I think, that concerned me and I think belatedly concerned the district court. But I think in all fairness, Mr. Six was not under any affirmative obligation. He was not under any affirmative obligation to answer the question. I think he did answer the question. With respect to these. Only answer the question. I think with respect that he did, which is to say that when he said that they were challenging the existence of an arbitration agreement, he understood that to mean are you raising an authentication objection? And, again, the best evidence of that is what Mr. Ranlett said on behalf of the defendants. When he said that all the defendant was doing was, quote, the document is hearsay unless there is an authenticating affidavit. And then he goes on to say it's abundantly clear that these were really his arbitration agreements. And the reason why this is critically important is because, again, even if a party knows that a document is authentic, and, of course, there was good reason, as we say in our briefs, to doubt that the version of the agreement in their possession was, in fact, authentic. But leaving that aside for the moment, a party is well within its rights to hold the opposing party to its burden and to raise an objection under Rule 901.  Wasn't the complaint based on this document? Why wouldn't this document have been produced in discovery? So it was, in fact, produced eventually. Eventually. Yes. With a redacted date and time. Right. Yes. To obscure the fact that it was made available prior to the filing of the lawsuit. I don't think that the district court made any finding that this was intended to obscure, and I think that there was, again, good reason for the redaction. There was no effort made to hide the existence of this document. What was the reason for the redaction? So there was no reason given at the time. And, frankly, there's not much of a record as to this. Right. But you just represented to us that there was good reason for the redaction, so if you'd share with us what that good reason was. Well, I think that the reasons would have been, and, again, I'm not representing that these were the reasons because we don't have a record on that, but I think that the good reasons would have been, number one, privilege, because I think that these, the revelation of the information in the redaction. So the date would have been privilege but not the document. Well, it could have revealed what the attorney had sought in preparation of the complaint. The date. I think, and the information about who it was sent to, which was also redacted, and I think that that could implicate the attorney client privilege and work product, but I think that there also could have been a valid relevance objection because this was arbitration-related discovery, and obviously what was relevant. Was the privilege granted? So there was no ruling on that because when a subsequent forensic examination. Discovered that it had been redacted. No objection was made by appellants to the production of the unredacted version, and I think that reflects the fact that there was no effort to kind of cover all this up. If anything, if you look at the exchange in the deposition, which I'm sure Ms. Hyman will refer to, in that exchange it was appellants, it was counsel for Mr. Dillon, that suggested the possibility that this loan agreement, this version of the loan agreement might have been the version that he executed at the time and that he might have done. And then after, well, he offered two versions. He offered, he proffered during his deposition that he sent the copy prior to the filing of the lawsuit, and all of a sudden a recess was taken, and when he came back his story changed. I actually don't think that you can draw any such inference from the time. Why am I not just reciting facts? Well, I think in fairness it is factually true that there were two breaks in the deposition. There was an 11-minute break, which took place well before the relevant questioning, and then there was literally a one-minute break, and to be sure it was after the one-minute break. And that's all I'm saying. Yes. Right. So what I said was accurate. You dislike any, the inferences that can be drawn from it, but you're not saying that my characterization was inaccurate. Of course not, Judge Dankin. I think your characterization is accurate. I'm just arguing that you should not, in fact, draw any inference. I was simply stating the fact. Well, I do have a question about your position as to the standard for evaluating a court's finding of bad faith for the purposes of imposing attorney's fees. What's the standard under the court's inherent authority? So I do think that the standard is clear error review. I do think that the underlying standard is that bad faith has to be found by clear and convincing evidence. And why would that be after the Supreme Court's decision in, I believe it's Goodyear, which makes it clear that the heightened standard of clear and convincing only comes into play when the award is punitive rather than compensatory? Well, I think that, again, the reason is because, as a general matter, bad faith is the standard that is applied in a variety of contexts. Well, not, first of all, not in the Fourth Circuit. That is not the standard in the Fourth Circuit. Isn't it correct that the district court had to go to another circuit to find clear and convincing? I believe that we cite Fourth Circuit authority for that proposition. I don't remember that, but you can correct that. I'll go back on rebuttal and give you the authority. And I believe it may have been in the Rule 11 context. Okay, but that's not my question. My question is the cases in which the clear and convincing standard has been applied have been in those instances in which the damages were punitive. And here the district court did a masterful job of attempting to weed out that which was punitive from that which was designed to compensate for the unnecessarily expended attorney's fees. But, Judge Duncan, even if you disagree with that, I think our fundamental – What? Disagree with what? With whether the underlying standard is a clear and convincing standard. What I'm trying to come to is what's your basis for suggesting that it is? Yes, I believe we cite authority, and I'll come back to you on rebuttal on that. But I think that the critical – And I'm asking you about the Supreme Court's case in Goodyear, which clarifies the area. Yeah, my recollection is that we thought that there was Fourth Circuit case law that survived Goodyear for that proposition. But even if you disagree with that, our core submission on the bad faith finding because, of course, you know, we make the third argument in our brief that the bad faith finding cannot stand. Our core argument is that that bad faith finding was infected by Judge Eagles' erroneous belief that there was somehow an affirmative obligation to produce this document. No. And really the court – I think the district court went out of her way to say that, no, the belief is that the actions in question vexatiously multiplied the proceedings and wasted the court's judicial resources, I believe she said. Well, that was the basis, of course, for her finding of sanctions under 1927. But I think when she was analyzing good faith, which, of course, goes both to 1927 and to the court's inherent authority, time and again in, I want to say it was Section B4 of her opinion, she relies on the fact that there was somehow this underlying affirmative obligation. And, of course, when you strip that away, there's really not very much left to sustain her findings. 1927? On the issue of bad faith, Judge Duncan, which, of course, goes both to 1927 and inherent authority. I think on that issue she really relies on two things. First, Mr. Six's statements concerning the Venn Capital Agreement, which I would respectfully submit, were not misleading and certainly did not rise to the level of a false statement, which is required to implicate the duty of candor under Rule 3.3. And second, she relied on the statements during the sanctions proceeding that the possession of the agreement was not material. And I think that that statement was exactly correct when what you're dealing with is an authentication objection. You are not standing here today arguing that the Dillon copy is any different from the other document, are you? No, we are not, Judge Keenan. But really the core of our submission to this court is that the objection that was raised in this court is no different from, say, a party arguing that a claim should be dismissed, even though they know that there may be merit to the underlying claim because, for instance, a party fails to include an element in their complaint. And we cite authorities from a variety of contexts involving dispositive motions where courts have said that raising those sorts of objections is entirely permissible. And I think that the critical question that I would ask, Ms. Hyman, if I were in your shoes respectfully, would be what is the closest authority to the imposition of sanctions in this context? And as the amicus brief on behalf of the law professors as well as the declarations of the professors below pointed out- Could I just refer you to, before you conclude, pages 48 and 49 of your brief in which you say, as the district court correctly recognized, sanctions either under 1927 or a court's inherent authority are proper only if the record contains clear and convincing evidence that counsel acted in bad faith. And for that proposition, you cite a D.C. Circuit case and a Fifth Circuit case. Yeah, I believe that we have a Fourth Circuit case, but I believe it may be outside the context of 1927. I will find that case when I go back to the council table. And if I don't have it, I will let you know when I get back up on rebuttal. But just to conclude my last sentence- Yeah, before you conclude, let me ask a question. You're not arguing here that Judge Eagles said that there was an absolute duty to disclose, are you? I mean, she tethered it to the specific facts of this case and the representations of counsel. She didn't say in any case that there is this duty to disclose, did she? Regardless of whether it is- It was a yes or no question, I think. Yeah. I guess I'm struggling a little bit with what it means- Do you agree with that? I don't think that there's any statement that there is a blanket duty to disclose or an absolute duty in all circumstances. So you agree with Judge- so she did not. But I think that if there is any duty to disclose, whether it's limited to the facts of this case or more broadly- I think we understand. Yeah, that there's a potential chilling effect. Great. Thank you. And I've reserved the balance of my time. Thank you. Yes, Ms. Hyman. Ms. Hyman, yes, thank you. Leslie Hyman for Generations. May it please the Court. I'd like to start with going back to what the actual objection was. Because I think it also shows something about the way these lawyers were conducting the litigation. The actual objection was not authenticity or authentication. The actual objection- and this is on page 153 of the record, and I'm going to read a copy so that we're clear- is that the loan agreement was inadmissible hearsay. And it's ridiculous that it would be hearsay. This is a 12B motion. The Court can consider documents attached to the complaint and to avoid exactly what happened here of a plaintiff deciding not to attach a document that they don't like to their complaint. It lets the defendant bring forward the documents that are incorporated within the complaint and use them on a 12B6. We were not offering this into evidence. This was not an evidentiary hearing. We were not- there was no requirement whatsoever that the document not be hearsay. Now, they do say we don't offer any explanation how it came into possession of the loan agreement or whether it is authentic. And as an example, they say Generations provides no declaration under Federal Rule of Evidence 8036 or certification under Federal Rule of Evidence 90211 to support the admission into evidence of the loan agreement. This was a motion to dismiss. We were not trying to move for admission into the loan agreement- of the loan agreement. And so all the cases they cite throughout this whole proceedings and in front of this Court about the burden at summary judgment or the burden at trial or motions in limine are completely irrelevant. They made a bad objection to start with. And then their examples, 8036 and 90211, those are how you would get a business record into evidence. But those are not the only way we could have avoided had there been a valid hearsay objection. That's not the only way even that we could have authenticated the document. Because, for example, Rule 902- I mean 901, which is an authentication rule. 901B4 allows you to authenticate if the appearance, contents, substance, internal patterns, or other distinctive characteristics of the item taken together with all the circumstances show that the document is what it appears to be. And, for example, in this case, the fact that our document matched Mr. Dillon's document, the contents, and the fact that the contents even of our own document match the allegations in the complaint, would have authenticated the document. That's another way we could have authenticated it. But what we said instead in response is we don't have any obligation to authenticate it. On 12B, the court can consider documents that we attach that were referenced in the complaint as long as there is no challenge to the authenticity. So then we get to the hearing before Judge Eagles. And this is in the record at 206 and 207, which my colleague also mentioned. But he, I think, misrepresented it a little bit. The court said, the one question I had for you, and she's talking to our side, was about the loan agreements that the various defendants submitted. Everyone said in their reply brief that I can consider those at 12B-6 because their authenticity isn't challenged. But I read the plaintiff's briefs as challenging their authenticity. And, yes, Mr. Ranlett throughout then says, no, no, no, Judge, that's not the objection they were making. Because, yes, at that time we did not think they had made an authenticity challenge. He's right about that. But Mr. Six then doesn't ever, ever throughout that hearing get up and say, no, Judge, we didn't make an authenticity challenge. We made an authentication challenge. And actually we didn't even do that. We made a bad hearsay objection. He doesn't ever clarify. So that's the first thing he does. He lacks candor to the court because what I think happened is they said, ooh, cool, an objection we didn't make. We'll run with it. On that, opposing counsel said that you can't violate the candor to the court duty unless it's a completely false statement. I thought I heard him say something like that. I thought I heard him say that, too. That can't be right, is it? It shouldn't be right. And there's a case out of the Ninth Circuit, Fink v. Gomez, that says even accurate statements coupled with improper purpose can give rise to sanctions. So there's case law to support that proposition, but I also agree with you. How can that be right? How can I not violate my duty of candor because I just don't say anything? I have a question about which grows out of Appellant's argument. In a situation such as this, I assume, because I think it's correct, that a party has no burden to come forward with evidence that might be helpful to the other side, but how does a court draw a line? And I guess your answer to Judge Thacker approaches it between not being obligated to produce evidence against itself and not misleading the court, and where would the line exist in this case, and did the district court draw it appropriately is what I'm asking. I believe she did because, again, we're looking at the totality of the circumstances. Had maybe, had Mr. Six not corrected Judge Eagle's perception of their objection, but that then not caused her to rule that our failure to authenticate made her deny the first motion, and then when we renewed the motions with the affidavits that she thought were necessary, which, of course, we did not think were necessary. We did it because that was the basis of her ruling. Then to come back, well, actually, I'll back up. He also, she felt, misled her and, in fact, all of us into thinking he didn't have copies of any of the loan agreements. We haven't really talked about that. And, yes, he says, no, no, I just was talking about Venn Capital, but Judge Eagle's was there, and she writes 63 pages about how she felt that she was misled. Well, Ms. Hyman, it sounds to me like in your answer to Judge Duncan's question, then you're saying is you don't really have a limiting principle other than the fact that you, there's no blanket disclosure requirement, that everything is tethered to the facts of a specific case. Or if there is a limiting principle, tell us what it is, because I don't think you're getting there yet. Okay, sorry. The limiting principle is you have no duty to disclose a document unless you are suggesting that it doesn't exist. You cannot, and even then, I don't know if they have a duty to disclose it. You have a duty not to suggest something does not exist that you have in your possession. And you have a duty, I mean the cases seem fairly clear, you have a duty not to make an authenticity objection or not to run with the court's perception of an authenticity objection when you have in your possession a document that would be at the very least circumstantial evidence of the authenticity of the document. And what cases are those? No, that's my limiting principle. No, but you just said that's what, I understood you to just say that's what the cases hold, that that's the line. And I was asking you what specific cases were you referring to? Oh, okay, so that is the interstate steel setters. And the, there's another one. I'll find it. And Fenge versus Feld, that was not a sanctions case, but the court expressly held that was the Northern District of Illinois. Opposing party is not acting in good faith in raising a failure to authenticate objection  and here they're saying they didn't know it was authentic. But then Judge Eagle says, well, that wasn't for you to decide. And there was one other case, and we cited it in our brief, and Judge Eagle cited it in her opinion, but I'm not finding it in my notes right now. It would certainly seem that my question at oral argument was pretty clear. Are you challenging the existence of, it seems to me that that would call for some sort of, no, we're not challenging the existence, we're challenging something, just some sort of clarification if, in fact, my questions weren't clear. We certainly agree. And, in fact, I had those same two pages pulled up on my tablet in case we didn't get there in my colleague's presentation. But, yes, I believe Mr. Six also misled this court. Again, possibly not affirmatively if he believed your question was unclear, but certainly by omission. And I think in that colloquy you asked him a couple of times, you're not answering yes or no, please answer yes or no, and he still didn't. And I think what we can also look at is the proceedings afterwards. Going back to Judge Eagle's, in her first order says, Dylan disputes the authenticity of the documents and objects to their consideration. So even in her first order, that's how she describes it. But then, a big part I think we haven't really talked about, about the sanctions, what the sanctions were about, was when we then came back with the affidavit they said they wanted, they said it was an improper motion to reconsider because it wasn't new evidence. Right. Yes, I think we're familiar with that since we heard that on our argument. But what about my question about the clearing convincing standard? I did not see, well, let me put it this way. In that section of the brief discussing that issue, appellants do not cite a Fourth Circuit case. Do you have a view as to the applicability of the Supreme Court's decision in Goodyear last year? I actually have not. If you're not familiar with it, that's fine. I'm not familiar, but what I am instead familiar with is prior Fourth Circuit opinions that show much more deference to the district court on a sanctions order than the Fifth Circuit opinion that the appellants are relying on. So in EEOC v. Great Stakes from 2012, the court talks about deference to the district court in the absence of compelling evidence to the contrary. And in Enright Jemzik Clinic, which is actually, there's a petition for review at the Supreme Court now, but that was just from this last March a year ago. And the Fourth Circuit gives a very deferential standard of review to a sanctions order. So not only do they not discuss clear and convincing, but the deference to the district judge's fact findings is far different than the Fifth Circuit opinion that appellants rely on. And does it matter whether it's pursuant to the court's inherent authority or 1927 in your view? I do not believe so. Does it matter in this case at all that discovery had not commenced? No, Your Honor, because again, I'm not saying that they had an affirmative duty to produce the document. I'm saying they had an affirmative duty not to suggest that no such document existed and not to make or run with an authenticity objection when they had evidence in their possession suggesting that the document was in fact authentic. What about the fact that they were necessarily relying on part of the document in terms of their own complaint? How does that factor into your analysis? So I have to be a little careful here because Mr. Six claims he was not relying on the terms of the document in his complaint and that he could have litigated this case had there been no agreement whatsoever. Right, but now that we know that he had the document a week ahead of time and given the fact-specific nature of the inquiry before the district court, how does that impact the analysis that he necessarily had the document, was relying on part of it for his complaint? Does that help you or hurt you or is it a wash? Well, it helps us in that because he was clearly relying on it for his complaint. That let us bring it forth on a Rule 12 motion without these evidentiary burdens they were trying to place on us. Unless they said we challenge the authenticity of this document, in which case, I mean, had they said that, then in our reply we wouldn't have said, no, no, we don't need an affidavit. We would have said, all right, fine, we'll go get an affidavit, which is what we ultimately did when we found out from her oral argument and then from the opinion that that's what she thought was necessary. Once we found that she thought that was necessary, we did it. But we didn't think it was necessary based on anything they had said. And I guess I'd also like to move forward a little bit because I don't want to emphasize too much only what happened on that day at that oral argument. I mean, that's what started this. And my colleague is correct. I'm going to talk about what happened, for example, at the deposition. They like to cut and paste from what happened at that deposition and not give the full story. The colloquy between Mr. Moore and Mr. Kaplan, so we're going back and forth questioning Mr. Dillon. As you recognized, he's very clear for several pages that he printed this document at the time he took out the loan. And then there's a break and now he can't remember anymore. And then a lawyer for Bay Cities Bank is asking him, how come you have theirs and not mine, basically. And the colloquy on the record in the deposition between Mr. Moore and Mr. Kaplan is, well, there's a perfectly good reason for that. Would you like us to take him ourselves and explain this to you? And we said, sure. And the explanation they offered was, couldn't you have printed it at the time that you took out the loan in order to fax it to Western Sky? If they really thought this was not the accurate document, or if they really thought that he had printed it four months later, why did they do that? And at the sanctions hearing, Judge Eagles expressly says, I want to hear, why did you do that? And they never answer. They don't explain it. They don't address it at all. And she used that as part of her further evidence that the whole proceeding was misleading and that they were playing fast and loose with the facts of this situation. The other thing I wanted to talk about is Mr. Six. So they also are not entirely forthcoming with what they did in the written discovery. They like to describe what they did in the written discovery as withdrawing their authenticity or authentication, whichever, withdrawing their objection. And the reason they withdrew the objection is that they had this good case law, and so it would help them certify a class rather than look at the cases one by one, which I think, well, we don't have to get there because it didn't come up. That's not all they did. In the responses to the interrogatories, they said, we're not making that objection anymore. In the responses to the request for admissions, they say, we admit, and you couldn't just say admit. When you do responses to requests for admissions, I usually just say admit. But that's not what they did. They say, we admit that this, and it was our copy, is a true and correct copy of the loan agreement that Mr. Dillon clicked through on the day that he took out the loan. And even after making that admission, this document is a true and correct copy. Mr. Six, throughout the whole sanctions proceedings, still keeps saying, I could object to the authenticity even today. I don't believe that it's the correct document even today. How can he say that? He has admitted, and his client admitted at the deposition. Mr. Pullen says, is this the one? Even in the briefing today, I could still say that this is not a true and correct copy. I still have doubts in my mind. No, it's too late. You can't have doubts in your mind anymore. Your client has admitted it, and in written responses to discovery, you have admitted it. You didn't just withdraw the objection. I want to also briefly address the parade of horribles that they talk about would happen if this order is affirmed. These sanctions orders are all, and that's why you can't find one exactly like this, because they're all based on specific acts in the context of the litigation. And so the rule here is going to be, if the court affirms, you can't make an authenticity objection, or lead the court to think that you had made an authenticity objection, or not correct the court when she says you made an authenticity objection, and then suggest that you don't have a copy, and then not produce your copy, and then when the other side gets their authenticating declaration, say, no, no, that's not good, because that's a motion to reconsider, and then we have to come here, and then we go back. When you know that when you produce your document, that will be new evidence, and then we'll have the motion to reconsider then, and then litigate the sanctions in bad faith. That's the rule. So you've come back full circle to make an inherently factual basis for the rule? It is. Yes, it's a factual inquiry. Yes, I think it does have to be. I did want to clarify one thing. In their reply brief, they're very clear. Do you want to summarize briefly? Yes, I would like to. I mean, I kind of already did, but to summarize, this is an inherently factual inquiry based on the facts of not, at the very least, not correcting Judge Eagle's perception of the objection they were making. At the very least, not clarifying that they had a copy, and making it sound like they didn't have a copy. Objecting to our motion to reconsider because we didn't have new evidence, knowing that eventually we would have new evidence because we would get the copy that they had. Producing the document with the redacted information, but then not, and if the objection is this attorney-client privilege, they didn't then make that objection later. And then litigating the sanctions in bad faith. The Court did not err in its well-reasoned 63-page opinion on imposing sanctions in this case. Thank you very much. Mr. Shanmugam, you have some time for rebuttal. Thank you, Judge Duncan. Just three points on rebuttal, and of course I'm happy to answer the Court's questions. First, I want to be absolutely clear on this issue about the clear and convincing evidence standard, which Judge Duncan asked me about. There is a Fourth Circuit case, but it's outside the context of 1927 and inherent authority, as I acknowledged, a case that stands for the proposition that when reviewing sanctions awards generally, you apply a clear and convincing evidence standard. And just to get the citation out there, because it was not in our brief, it's the Inry-Leody case. It's 667F3-419. I think with all due respect, Judge Duncan, I don't read Goodyear to address the specific question of the burden. I do think it stands for the broader proposition, as you suggested, that inherent authority awards more generally have to be compensatory and not punitive. And you're absolutely right. We're not arguing here that the award in this case was punitive. But on this issue of the clear and convincing evidence standard, I think Do you not think it was punitive? No, we're not litigating that at all here. We simply think that the Court incorrectly determined that there was bad faith and an abuse of the judicial process, which is what the Supreme Court has required. Could I clarify? Because the words seem to make a great deal of difference to you. You're not litigating it. Does that mean you don't object to it? We're not arguing that this violates the Goodyear principle. In other words, we're not arguing that the award in this case is punitive. We're arguing that it's improper. We're certainly not arguing that the award in this case is punitive. We are not arguing that it's punitive in the sense of being not remedial. In other words, we're not arguing that the Court somehow imposed $10 million when, in fact, there were only $150,000 of relevant attorneys' fees. Well, that's the difference between punitive and compensatory. Correct. And that's the Goodyear issue, and we're not litigating it. You're not litigating that the award in this case is punitive as opposed to compensatory. Correct. That is correct. So we are simply arguing that the clear and convincing evidence standard applies. And that is the standard that the District Court applied, if you take a look at page 935. Yes, I don't doubt that she applied it. I'm just not entirely sure it was correct. Yeah, and Appellee does not dispute that in its brief either. But I think more generally, as I said to you, Judge Duncan, regardless of what standard you think the District Court should have applied, and again, you're reviewing Judge Eagle's opinion, and that is the standard that she applied, we think any finding of bad faith here would be clearly erroneous. And that leads me to my second point regarding this claim that what was said was misleading. We're not somehow arguing that a statement can be outside the realm of sanctions if it is merely misleading. My point in response, I think, to your question, Judge Keenan, was simply that if you look at Rule 3.3, it is worded specifically in terms of false statements of fact. It does not say false or misleading statements. Our submission to the Court, however, is simply that the statements that she relied on, when you strip away this erroneous legal view that there was somehow an affirmative obligation to disclose, the statements on which she relied were simply not misleading, no reasonable fact. What about omissions? I'm sorry. What about omissions of fact? You're saying that you can pretty much stand there and kind of ride it out, even though the Court's under a different perception, that that is not bad faith? I think, Judge Keenan, and forgive me for talking quickly, but I know my time is short. Well, look, and especially because this goes to omissions, at the motions hearing at JA 229, the district court asked Mr. Six, do you agree that there is some sort of written agreement somewhere? And she follows up and says, I'm not saying you should produce it, but do you agree that there's some sort of written agreement somewhere? And he just fumbles around and never, I mean, that's a yes or no. How is that not bad faith? He's got it in his pocket. Probably got it at the council table. Somewhere, it's there. It's in your files. They were talking about the Venn capital agreement in this exchange. This was in the context of the equitable estoppel argument. He did not possess that agreement. And you're right, he sort of fumbled in that answer, but I think that answer was consistent with what he said a few pages earlier with regard to Venn capital. And I think with all due respect to my friend, Ms. Hyman, she suggested in her argument that he misled the Court into thinking that he did not have copies of any of the agreements. In the relevant passage, he was quite specific. He said, I asked Mr. Dillon, for instance, with Venn capital, do you have a loan agreement? I drafted the complaint without the loan agreement. That was correct, but more generally, that was not in the context of the authentication objection. Well, I asked multiple times because I had this problem throughout. You're bringing a lawsuit on the basis of an agreement, and you're challenging, and I said, are you challenging the existence of the agreement? My question was pretty clear, and yet my response was, at best, even after multiple attempts, a skew. I think I would be happy to acknowledge one thing, which is that there are some places where Mr. Six, I think like all of the parties to this litigation, spoke imprecisely about authenticity as opposed to authentication. I think the only thing that Ms. Hyman got wrong when she said that he misrepresented to the Court is that she didn't say courts, plural, including us. I'm just going to have to respectfully disagree with that, Judge Thacker, with regard to this exchange because, again, I would refer the Court to the full paragraph at the bottom of 548, which made clear that this was a burden-based objection. To whom did it make it clear? It certainly didn't make it clear to me. Well, but I think in all fairness, the salient inquiry is, what did the district court say? But I'm not interested in the salient inquiry with respect to my question. Well, look, could he have given a more precise answer? It was a burden-based objection. Well, I think he understood that question to be a question about what took place below. He didn't. It's pretty clear. Are you arguing the existence? Well, we've gone over this. Yeah, but Judge Duncan, I was going to say, though, that the real question is, what did the district court understand? Well, that may be a real question. It wasn't my question at that point. Well, I take your point, Judge Duncan, but, of course, that was the basis for the sanctions order. And, again, Ms. Hyman was given the opportunity by this Court to come up with a case that's even remotely on point, and the best she could do. But you're focusing on a different point. You want to focus on an affirmative obligation to produce a document. And I think if you've heard anything this morning, it's that that is not the focus of either the district court's orders or the questions. So the questions have focused not on that, though I do think that was a central part of the district court's order. The questions this morning have largely focused on this issue of bad faith and whether he made misleading statements. And I think with all due respect, with regard to an authentication objection, it is immaterial whether or not you possess an authentic version of the document in your possession, and the cases on which they rely are distinct because there are cases where an authentication objection was raised in the face of an actual record where a document had been produced, and, indeed, where the document was relied on by the objecting party. And that is why we think it would really be unprecedented to uphold the sanctions order in this award and why that would have a chilling effect on the adversary system, which is predicated on the notion that you can hold a party to its burdens. We would respectfully request that the sanctions order be vacated.
judges: Allyson K. Duncan, Barbara Milano Keenan, Stephanie D. Thacker